## GALLAND–HENNING MFG. CO. v. LOGE-MANN BROS. CO.
### Civil Action No. 708.

District Court, E. D. Wisconsin.
July 16, 1943.

Casanave Young, of Milwaukee, Wis., for plaintiff.

Wheeler, Wheeler & Wheeler, of Milwaukee, Wis. (by L. C. Wheeler and S. L. Wheeler, both of Milwaukee, Wis.), for defendant.

DUFFY, District Judge.

This is a patent infringement suit. Plaintiff claims that defendant infringes Claims 1, 2, 3, and 5 of U. S. Patent No. 1,932,041, which relates to improvements in baling presses and more particularly to a triple compression press. The claims in question are combination claims. The defense is invalidity and non-infringement. Claim 2 is a typical claim: "In a multiple compression baling press, the combination of an open press box provided with an offset recess in one of its walls and alined with the adjacent wall, a movable cover for closing the filling opening, a ram working transversely of said box for initially compressing the material therein and forming a continuation of one of the walls of said recess, a second ram working longitudinally of said box for compressing material into said recess, and a third ram operable in said recess for obtaining final compression of material therein."

To better understand the purpose of the inventor, the following is quoted from the specifications:

"The invention has primarily for its object to provide a comparatively simple, economical and efficient press of the foregoing type (triple compression), having an exceptionally large baling chamber for bulky scrap, and which can be operated in a manner similar to a conventional double compression press for baling small, compact scrap or clippings.

"Incidental to the foregoing, a more specific object resides in the provision of a triple compression press, in which the final high compression is effected between solid walls.

"Another object resides in the provision of a press of the foregoing type, including an elongated press box, in which the initial compression is performed transversely, the second compression longitudinally, and the third compression vertically.

"A still further and highly important object resides in the provision of a press box having a restricted offset pocket, in which the final high compression is effected."

It is highly desirable in the scrap trade to compress the bulky items of metal scrap, such as fenders and other parts of automobile bodies, barrels, etc., into a compact and uniformly shaped bale. Steel mills desire that such scrap for their use be box-shaped, 20" in width. It is desirable that the various sides of the baled metal should be comparatively smooth, so that metal fins may be eliminated. It had been the previous experience in baling metal that fins were often formed on one or more sides of the bale, making it more difficult to pile, store, or otherwise handle.

In the disclosure of the patent in suit, the metal scrap is placed in an elongated press box; then the movable cover is closed; the initial compression is then performed transversely; then follows the second compression, longitudinally, which forces the metal into the offset chamber; the third compression is then applied vertically. This last compression is effected within three solid walls which does away with the possibility of metal fins, with the possible exception of one side.

Defendant contends that there is no invention because Jacobson, the assignor of plaintiff, merely took a standard two compression press and added thereto a gathering ram which operated transversely. This would, however, require considerable redesigning.

■ Single and double compression presses, having both transverse and longitudinal compression, are old in the art. In fact, the art relating to baling presses is quite highly developed. In view of the limitations imposed by the prior art, the claims of the patent in suit must be narrowly construed. Thus construed, I am of the opinion that Jacobson's development constitutes invention.

Much of the metal scrap in recent years has been bulky. Yet the steel mills desire a bale of limited width. The two ram press was necessarily limited in width to the final width of the bale. Bulky scrap could not be satisfactorily handled with such limitation. In the three ram compression press which was manufactured by defendant under the Jacobson and Kruse patent (No. 1,766,642), all of the compressions occurred within the press box. There was no offset chamber. As the face of both the longitudinal and transverse rams formed two of the faces for the third compression and were not entirely rigid, metal fins occurred quite frequently. This was undesirable. In the patent in suit, the metal bale could be produced at the desired width and at the same time the press box could be of any width necessary to handle the bulky type of scrap metal. The prior art does not disclose a triple compression press provided with an offset pocket in which final compression occurred. I am of the opinion that the claims in question are valid.

### Infringement.

■ In defendant's accused device the first compression is longitudinal, the second transverse, and the third, in an offset pocket, is vertical. Thus the first two compressions are in the reverse order from those of the patent in suit. The order of ram operation is the same as that of the prior art (Jacobson and Kruse Patent No. 1,766,642). The rams are the same and their working faces are the same as those made by the defendant under that patent. Plaintiff contends, however, that the terms "transverse" and "longitudinal", as used in its patent, are merely relative terms in defining the action of the primary and secondary rams, the movements of which are transverse to each other; in other words, that "longitudinally" does not necessarily mean longitudinally in the ordinary sense. This theory of relativity is as difficult for me to comprehend as the one expounded by Einstein.

Ordinarily, the order in which the rams operate would not be regarded as important, but plaintiff's patent strongly emphasizes the manner and the order in which the compressions are effected. For instance, the specification states: "In carryng out the present invention, various conventional features are employed, such as a sliding cover and the usual compression rams. Therefore, the same form no specific part of the present invention, which is directed broadly to the manner in which the respective compressions are effected, and the highly novel design of the press box."

Likewise, one of the objects of the invention heretofore quoted emphasizes that "the initial compression is performed transversely, the second compression longitudinally." Claims 1, 2, and 5 specifically describe "a ram working transversely of said box for obtaining initial compression (initially compressing) of material therein," while Claim 3 describes "a ram working longitudinally in said box for obtaining secondary compression." It is apparent that the transversely movable ram of the patent in suit must be located in the low pressure or scrap receiving portion of the press, and first to operate, while the transversely movable ram of the accused press must be located at the high pressure end of the press, and second to operate. The doctrine of equivalents cannot be invoked by plaintiff to include that which was specifically and voluntarily excluded.

Furthermore, only one cover is specified in any of the claims of the patent in suit and only one is disclosed, while the accused press has two press boxes set at right angles to each other and provided with separate covers, and the rams and the covers are operable in alternation. The chamber in which the final compression takes place is laterally extended, instead of longitudinally as in the patent in suit. Thus, the scrap receiving box can be refilled while a bale is in the final compression. This acceleration, which is the objective of defendant's accused press, cannot be achieved by the press of the patent in suit.

I conclude that the defendant's accused press does not infringe the claims of the patent in suit.