## GALLAND–HENNING MFG. CO. v. LOGEMANN BROS. CO.

### No. 8434.

Circuit Court of Appeals, Seventh Circuit.
May 25, 1944.
Rehearing Denied June 23, 1944.

Casanave Young, of Milwaukee, Wis., and George L. Wilkinson and Milton T. Miller, both of Chicago, for appellant.

S. L. Wheeler and L. C. Wheeler, both of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Plaintiff charged defendant with infringement of plaintiff's patent No. 1,932,041 issued to Jacobson October 24, 1933, on an application filed December 12, 1931. The defenses were non-infringement and invalidity, and the answer prayed that the patent be declared invalid. The District Court decreed the patent valid but not infringed, and from that decision plaintiff has appealed. This patent relates to improvements in baling presses and more particularly to a triple compression press.

The District Court handed down a written opinion (51 F.Supp. 796) fully setting forth the description of the patent and its uses and objects, and they will not be repeated here. The use of the patent and the accused device is for baling metal scrap,

and the object is to get it in such compressed form as to be satisfactory to steel mills, who are the purchasers. Single and double compression presses were quite old in the art and were used for many years for baling lighter materials. The bales thus produced were necessarily limited to the final width of the bale. Bulky scrap could not be satisfactorily handled with such limitation, and the disclosures of the present patent were designed to overcome such limitation. Claims 1, 2, 3 and 5 were in issue, and claim 2 was considered typical.[1]

On June 24, 1930, a prior patent for a three-ram compression press was issued to the patentee of the patent here involved, and to one Kruse, under the name of Jacobson and Kruse. Under that patent the present defendant had manufactured a three-ram compression press in which all three rams operated within a rectangular box or chamber. That patent was declared invalid by this court for lack of novelty on December 2, 1938. Logemann Bros. Co. v. Galland-Henning Co., 7 Cir., 100 F.2d 557.

In the present disclosure, the receiving box as shown by the exhibit is likewise rectangular (although it is not thus specified in the claims) and it differs from the former patent in the addition of an offset recess, which is aligned with the bottom and that side of the main box which contacts the second ram. This recess accommodates the vertically moving third ram, operating upward from the bottom.

The specification states: "In carrying out the present invention, various conventional features are employed, such as a sliding cover and the usual compression rams. Therefore, the same form no specific part of the present invention, which is directed broadly to the manner in which the respective compressions are effected, and the highly novel design of the press box."

The accused structure accomplishes precisely the same result. One distinction between the two devices, by which the defendant seeks to avoid infringement, lies in the order of the use of the respective rams. The patentee with considerable stress designates his respective rams as transverse, longitudinal and vertical, and yet he states that the drawings constitute "one complete example of the physical embodiment of the present invention constructed according to the best mode so far devised for the practical application of the principles thereof." The operation of his device consists of filling the receiving chamber of the box from its side. The scrap is then pressed by what he calls his transverse ram against the opposite side of the box until its width is the same as that of the longitudinal ram. This longitudinal ram then operates to compress the mass of material into the offset pocket. In the accused device, which is of the same form as that of the patented structure, the receiving box is filled from the end instead of the side, and the operation continues in the same manner as stated above. The defendant argues, therefore, that his first ram does not move transversely but longitudinally, because it travels along the length of the box instead of the width of it; and that his second ram is transverse the box because it travels across the box from side to side and not longitudinally. The District Court thought that this was a very narrow difference, but that it was sufficient to avoid infringement because of the crowded condition of the art and because of the stress which plaintiff had placed upon the order of the use of his rams.

It is interesting to compare the two devices when they are placed in the same relative position with respect to the first, second, and third rams, instead of using the words transverse, longitudinal and vertical. They operate in precisely the same manner and they produce precisely the same result. A line transverse of a box may cross from end to end as well as from side to side, but of course a longitudinal line no doubt means one running lengthways of the object. Hence the only difference between the patented article and the accused device, with respect to the use of the rams, relates only to the second ram. That difference is not one of direction, but of choice of words to express

---

[1] Claim 2. "In a multiple compression baling press, the combination of an open press box provided with an offset recess in one of its walls and aligned with the adjacent wall, a movable cover for closing the filling opening, a ram working transversely of said box for initially compressing the material therein and forming a continuation of one of the walls of said recess, a second ram working longitudinally of said box for compressing material into said recess, and a third ram operable in said recess for obtaining final compression of material therein."

the same direction, for in each device the course of the second ram crosses the projected course of the first ram at right angles.

■ Apparently there is no advantage or disadvantage in filling the receptacle either from the end or from the side, and we think a mere difference in the description of direction of the rams is not sufficient to avoid infringement. It seems to us that the issuance of the patent was not due, in whole or in part, to the order in which patentee uses his rams, or to the limitation of filling the receptacle from the side. To construe the patent as suggested by defendant we think would lead to an absurdity, for if one should use a square receptacle, which is certainly permissible under the claims, it could not be said to infringe because, all sides being equal, the phrase "longitudinal of the box" would be meaningless. That there is a distinction between length and breadth is due to the fact that the patentee chose to use as a preferred embodiment of his disclosure, a rectangular box, not a square, to be filled from the side, and chose an inept word to express the course of the second ram. We think such subtle refinements cannot constitute a valid basis for the issuance of a patent, or a defense against infringement. See Westinghouse v. Boyden Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136.

Defendant further contends that its device is an improvement over Jacobson and Kruse, and does not infringe the patent in suit, in that when the second ram of the accused device is closed and the third or vertical ram is in operation, the first ram may be opened while the third ram is in operation. In the Jacobson and Kruse disclosure, two walls of the third chamber are formed by the stationary walls of the receiving chamber, and the other two are formed by the faces of the first and second rams when closed, and of course they must remain closed during the operation of the third ram. In the accused device, and also the patent, the face of the second ram when closed still forms one wall of the third chamber, and of course must be kept closed during the operation in that chamber. The first ram may be opened after the second ram is closed, because its face no longer forms any part of the wall of the third chamber, due to the fact that the third chamber is recessed outwardly from the rectangular receiving chamber. This is also true of the patent.

■ As to the accused device, however, defendant urges a differentiation with respect to the patent in that when the first ram of the accused structure is opened, the receiving chamber may be partially filled while the third ram is in operation, thus saving time. This is due to the fact that the patent uses but one cover for the entire structure which must be kept closed until the third chamber and its ram have performed their functions, whereas the defendant uses a split cover, one for the second and third chambers, and another for the receiving chamber which may be removed when the first ram has performed its function, and the first chamber is ready for refilling when the first ram has been withdrawn to its original position. However, Jacobson is not limited to any particular form of cover, and it forms no specific part of his invention, and we think there is infringement. See Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437.

■ However, we think the patent is invalid in view of the teachings of the prior art, which we discussed in Logemann Bros. Co. v. Galland-Henning, supra, and in view of the further fact that whatever new thing the patent in issue discloses in addition to that disclosed by Jacobson and Kruse is the result of mere mechanical skill.

As we view the exhibits, the only material difference between Jacobson and Kruse and the patent before us is that in the latter, the inventor took the third or vertical chamber from the rectangular box and added it to the end of the second chamber, or in other words, as the District Court found, he added a receiving chamber with its transverse ram to a standard two-compression press of the prior art.

■ Plaintiff contends that if it appears from the findings of the court that the claims of a patent disclose an invention over the prior art, such findings of fact, if supported by evidence, will not be set aside by an appellate court. With this contention we are in accord. However, plaintiff apparently argues from such fact that, as a result thereof, we are precluded from passing upon the question of patent-

ability. That argument is not logical, for invention does not connote patentability. True, all patents disclose invention, but all inventions are not patentable. The statute defines what inventions are patentable, and novelty is only one of the ultimate facts required. If one constructs something new he has invented it, but that does not mean that it is patentable. Frequently an invention is the result of mere mechanical skill, or it may be anticipated by the prior art, although not precisely the same, or it may not be useful. In each of such events the device or product is not a patentable invention, but it is an invention nevertheless. This is not merely a fanciful discrimination with respect to the meaning of words, for the statute authorizing patents (35 U.S.C.A. § 31) is clearly based upon it. The District Court in this case recognized the distinction, for it did not find as a fact that the invention was patentable. It merely found that "Jacobson's development constitutes invention." 51 F. Supp. 797. In other words, it found as an ultimate fact that the device was novel. Likewise it never found as a fact that there was or was not infringement, but after a finding of some pertinent evidentiary facts, it found as an ultimate fact that "The claims of the patent * * * are not readable upon the * * * accused press." However, in its conclusions of law, it stated that the patent was valid, and that there was no infringement, and that the defendant was entitled to a decree dismissing the complaint for want of equity.

It is apparent that the District Court considered patentability and also infringement as questions of law to be determined by it from the ultimate findings it had made. The patent was presumed to be valid and it would remain so unless the ultimate facts found, supported by evidentiary facts, disclosed that the statute authorizing the issuance of patents had not been complied with.

■ Generally speaking, with reference to the subject matter permitted to be patented, there are four ultimate facts which must exist before an invention is patentable,—authorship, ownership, novelty not as a result of mere mechanical skill, and utility. If they exist concurrently the disclosure is patentable; if one is lacking it is not patentable. This must be true not because the finder of facts says so, but because the statute says so. Formerly it was recognized as axiomatic that the question of patentability was a question of law. Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665. Whether that recognition was obiter dictum, as urged by appellant, is not necessary for us to decide. At least it was apropos to the discussion of the question in issue, and its use, we think, was due to the general belief at that time among lawyers and courts that whether the ultimate facts as found were sufficient to warrant the relief authorized by the statute which specifically defined those rights was a question of law and not of fact. True, patent cases are sometimes submitted to a jury and its general verdict in such cases may involve and does decide indirectly the question of patentability, but this was done always under proper instructions of the court as to the legal application of the statute to the facts proved. A failure to follow those instructions was always regarded as a valid legal reason for setting aside the verdict.

However, in United States v. Esnault-Pelterie, 299 U.S. 201, 57 S.Ct. 159, 161, 81 L.Ed. 123, which was an appeal from the Court of Claims, the Court held that validity and infringement are ultimate facts upon which depends the question of liability, and that in actions at law they are to be decided by the jury. The Court further stated that "if the evidence is not sufficient to establish validity and infringement, it is the duty of the trial court to direct a verdict for defendant." In that case there was no specific finding of facts as to validity or infringement, but the Court of Claims on its findings concluded as matters of law that the patent was valid and was infringed, and that court's written opinion made the same recital. The Supreme Court held that the special findings may not be aided by statements in the conclusions of law, or in the opinion of the Court, to the effect that the patent is valid and infringed. The judgment of the Court of Claims was vacated and the cause remanded with instructions to "specifically find whether plaintiff's patent * * * was valid and · * * * (if so) whether it was infringed by the defendant."

Afterwards the Court of Claims, on motion of the parties, amended its special findings by adding specific findings that the patent was valid and infringed, and judgment was rendered as before. Certiorari was again granted, and the ruling

of the Court of Claims was affirmed, 303 U.S. 26, 58 S.Ct. 412, 413, 82 L.Ed. 625. In that opinion the Court called attention to the facts that Congress, 35 U.S.C.A. § 68, had permitted suit against the United States to be brought in the Court of Claims for reasonable compensation for the infringing use or manufacture of an invention covered by a patent, and review of that court's judgment by the Supreme Court was limited to questions of law under such rules as the Supreme Court had promulgated. Those rules provide for a finding of facts by the Court of Claims, and that " 'The facts so found are to be the ultimate facts or propositions which the evidence shall establish, in the nature of a special verdict, and not the evidence on which the ultimate facts are founded.' " It further stated,

"* * * The requirement that the Court of Claims should find the ultimate facts which are controlling places upon that court the duty of resolving conflicting inferences and to draw from the evidence the necessary conclusions of fact. * * * Even though the finding determines a mixed question of law and fact, the finding is conclusive unless the court is able 'to so separate the question as to see clearly what and where the mistake of law is.'

"We may, of course, inquire whether the subordinate or circumstantial findings made by the court below necessarily override its ultimate findings of fact and show that the judgment in point of law is not sustainable. But we have no such case here. Nor is the case like that of a review by a Circuit Court of Appeals of decisions of boards, such as the Board of Tax Appeals, where the evidence is before the appellee court and the question is whether there was substantial evidence before the Board to support the findings made."

 In that case the Court further stated that it was "not unmindful of the rule that where, with all the evidence before the court, it appears that no substantial dispute of fact is presented, and that the case may be determined by a mere comparison of structures and extrinsic evidence is not needed for purposes of explanation, or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the questions of invention and infringement may be determined as questions of law." We take this rule to apply only where there is no substantial dispute as to the *evidentiary facts,* and not to *ultimate facts,* for if patentable invention and infringement are facts to be found, as stated in the opinion, and there is no substantial dispute as to either, there would be no occasion for the rule, for there would be no controversy.

We think the case before us comes within this rule. There is no substantial controversy as to any evidentiary fact. We have before us models of the patent in suit, the alleged infringing device, and the former patent to Jacobson and Kruse which was declared invalid by this court. This case may be determined by a mere comparison of these structures, and extrinsic evidence is not needed for explanation, or evaluation of prior art, or to resolve questions of the applications of descriptions to the subject matter. We are convinced that the disclosures do not disclose patentable invention. The District Court did not err in dismissing the bill of complaint for want of equity.

Decree affirmed.