## HARLEY C. LONEY CO. et al. v. RAVENSCROFT et al.

### No. 9079.

Circuit Court of Appeals, Seventh Circuit.
June 23, 1947.

Charles B. Spangenberg, of Chicago, Ill., Herbert A. Minturn, of Indianapolis, Ind., and Leonard S. Lyon, of Los Angeles, Cal., for appellants.

Eugene C. Knoblock, of South Bend, Ind., for appellees.

Before SPARKS, KERNER and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellants, the respective owners of the patents here involved, charged appellees with infringing claims 7, 8, 10, 11 and 12 of United States patent No. 2,036,757 to Hume, and claim 1 of United States patent

No. 2,029,561 to DuSang. The former was issued April 7, 1936, on an application filed December 3, 1932. The latter was issued February 4, 1936, on an application filed April 4, 1934. Infringement of neither patent is denied, and the only issues presented are whether either patent discloses patentable invention. The District Court held that neither did, and dismissed the action for lack of merit. From that judgment this appeal is prosecuted.

At the outset we call attention to the fact that this ruling is based upon the court's alleged conclusions of law, numbers 5 and 6, that each claim in issue is invalid for lack of invention. It is fair to say that the factual findings and conclusions of law, as usual, were prepared by counsel, and of this we make no issue. However, there seems to be a growing tendency to give words a different meaning from that to which they are entitled, which at times is quite confusing, in distinguishing between a finding of fact and a conclusion of law.

■ There are four ultimate facts required to be established by an applicant before he can obtain a patent. They are invention or discovery, authorship, novelty, and utility. Other specific requirements are set forth in the statute, 35 U.S.C.A. § 31, but they all pertain to the question of novelty or authorship. If all ultimate facts are found and are substantially supported by evidentiary facts, which of course need not be incorporated in the findings of fact, then the court should conclude as a matter of law that the disclosure is patentable, otherwise not.

Invention does not connote patentability. True, all patents are, or ought to be, based upon inventions or discoveries, but all inventions or discoveries are not patentable. It has many times happened that two or more persons, each unknown to the other, and unacquainted with the other's work, have discovered or invented precisely the same thing. True, each is not entitled to a patent, for that goes to the earlier and more diligent inventor or discoverer, but each is as truly an inventor or discoverer as the other, for that is the unambiguous reading of the statute, and it is supported by all our lexicographers, and by the root meaning of the words from which the English words are derived.

■ Of course, if there be no invention or discovery there can be no patentability, but there may be invention or discovery which is not patentable. Again, the invention or discovery must be new to the one making it, otherwise he would be a copier rather than an inventor or discoverer. If the disclosure is new to him, he is an inventor or a discoverer, regardless of the fact that others may have invented or discovered the same thing. However, he would not be entitled to a patent unless it was established by evidentiary facts that, among other facts, including utility, he was the first inventor or discoverer. Invention and utility are questions of fact; patentable invention is a question of law because the statute defines what is patentable, and it does not define the words "invention" or "discovery."

■ The prior art does not reveal the identical disclosures of these patents, nor did the court find, in so many words, that there was no invention. However, it was found that when the patentees entered this field, a mechanic skilled in this art could have produced the structures coming under the claims in issue without the exercise of invention. This, in effect, is a finding that no invention was disclosed, provided the respective patentees were skilled in the art. The evidence, by inference, might well indicate that both patentees were skilled in this art, yet there is no specific finding to that effect. If it be true, neither will be heard to say that he did not know, at the time of filing his application, what those skilled in the art already knew at that time. They are presumed to have known it, hence they disclosed no novelty, if such disclosures did not exceed the skill of the art. However, if at that time either patentee was not aware of what those skilled in the art then knew, he was not skilled in the art, and while he might invent or discover something in the art which was new to him, yet it would not possess novelty, hence would not be patentable, for patentability depends upon the knowledge of those skilled in the art, while invention or dis-

covery depends entirely upon the knowledge of the party making the disclosure.

■ The predominant theory of the findings of the court and of appellees' argument is that the disclosures of each patent were old in the art or did not exceed the then skill of the art, regardless of whether the patentees were versed in the art, and each, if true, would be a good defense. We therefore regard of no moment the inclusion in the conclusions of law, of the factual reasons for concluding as a matter of law that each claim was invalid. The conclusions of law must be supported by the factual findings, and if in this case the legal conclusion of invalidity or, if preferred, the lack of *patentable* invention, is supported by the findings, and if such findings are supported by substantial evidence, the conclusions of law are sufficient to support the judgment.

These patents relate to the very old art of balancing rotating bodies, and specifically, the balancing of automobile wheels. The Hume patent states:

"The present invention relates to an improvement in the balance of vehicle wheels provided with a pneumatic tire.

"At the present time, the increasing speed at which motor vehicles are driven has resulted in the necessity of dynamically balancing the wheels. It is not enough to attempt to balance the wheel, rim, and tire, constituting the complete unit, during the fabrication thereof, but it is necessary to balance the entire assembly thereafter upon its axis of rotation. Shifting of the rim during the rolling action resulting in variation in thickness of the flanges; welding of the rims; variation in tire construction; and the concentrated weight of the valve stem of the inner tube are some of the factors which result in unbalanced wheel assemblies and have to be overcome.

"Heretofore attempts have been made to balance the wheel assembly by removing material from certain localities and adding material in other localities. These attempts for the most part have been cumbrous, expensive, and ineffective and * * * are either of a permanent character or are limited to a particular and speci-

fied point of application and lack any degree of flexibility and ease of installation.

"It becomes the primary object of my invention * * * to provide a balancing mass for vehicle wheels of the pneumatic tire type, which is inexpensive, effective and may be readily and adjustably positioned along the flange of the wheel rim to balance the wheel, rim, and tire assembly."

The DuSang patent states:

"This invention relates to the art of balancing weights to be applied to rotating members particularly in automobile wheels. With the advent of high speed performance of automobiles and tires of considerable relative weight with large diameters, difficulty is frequently encountered in keeping the automobile traveling in a straight line. When a tire or a wheel on which the tire is mounted, or both, may be out of balance, the unbalanced condition of that wheel will cause the tire to tend to crawl causing one wheel to advance faster than the other so as to produce a turning effect particularly with the front wheels although the same effect may be observed with the rear wheels. It has been observed that in some cases the tires or the wheels may be so much out of balance that at speeds of 50 miles per hour or above, the unbalanced effect will be sufficient to cause the wheel to actually leave the ground during part of its revolution.

"I am aware of the fact that weights have been employed to counteract the unbalanced effect, but considerable difficulty has been had with such known types of weights for this purpose in 'that the weights could not be applied easily to the wheel and when applied would lose off.

"It is the primary purpose of my invention to provide a quickly attachable weight which will be safe and also very easily applied. It is a further primary object * * * to provide such a weight attaching means as will permit the weight to grip the rim of a wheel with the tire thereon cooperating to retain the weight in place."

The necessity for both static and dynamic balance in rotating bodies was well known. Static, or still balance, can be ob-

tained by applying the rotating object on free rolling bearings and allowing it to come to rest at the bottom, or it will seek the lowest point, which is always at the bottom. If a wheel is unbalanced statically, it gives a hopping action which causes the front end of the car to shimmy, and the wheels wiggle back and forth and also up and down. A wheel may be statically balanced and not dynamically balanced. The latter appears with a rotating mass having considerable width. Unless the weight is equally distributed down through the center of the tire, the wheel may be in balance statically and yet be out of balance dynamically, in which case the wheel will wobble, but not jump up and down.

At the time these applications were filed it was well known that rotating bodies, including automobile wheels, could and should be counterbalanced, and many different forms of counterbalances were rather promptly available to meet the conditions and requirements of any particular type or structure of a rotating body. This was established not only by expert and mechanical testimony, but by the following patents: Phelps No. 121,411; Seymour Nos. 189,506, and 250,684; Hubbell No. 734,417; Nichols No. 1,158,712; Wagenhorst No. 1,160,222; Booth No. 1,800,883; Batie No. 1,842,141; Sailler No. 1,896,974; Cataline No. 1,917,575; Rudolph (British) No. 23,418, (Norwegian) No. 5,443; and Tournon (French) No. 727,466.

As disclosed by the present specifications, the tremendous increase of speed by drivers of automobiles resulted in the necessity for a more accurate balancing of the wheel and its parts, and this was particularly true with respect to dynamic balancing. Neither it nor the static balancing could be perfectly and permanently accomplished at the time of manufacture. This was the problem that confronted the applicants, and each attempted to solve it for no new purpose, by no new elements, and by no new methods, except perhaps as those methods were applied to these particular disclosures.

The Hume patent discloses a weight construction which consists of a weight body and a resilient clip. This two-element unit fits snugly within the marginal flange of the rim of an automobile wheel with the clip passing around that flange and fitting between the tire and the rim. Appellants' two experts admitted that a weight of this character will stay in place by virtue of centrifugal force when the wheel is rotated at a high speed so that the clip is not necessary.

Claim 7 [1] of the Hume patent defines the combination of the weight with its clip, and the wheel with its rim and tire.

Claims 8, 10, 11 and 12 define the combination of a body forming a weight, and a spring clip carried by that body and usable to attach the weight to the rim of a wheel. Claim 12 [2] is illustrative.

The Booth patent discloses that balancing weights for automobile wheels should be arcuate lengthwise to conform with the circumference of the wheel and should be transversely curved to fit and seat against a peripheral flange so that the flange will hold the weight in place while rotating.

The Rudolph British patent teaches that it was old to use a hook to secure a weight body to a wheel rim with the hook end terminating between the tire and the rim.

The evidence discloses that speed increases made slight unbalance conditions, theretofore dormant, an active and disturbing force, and that these are made active, not in proportion to the increase in speed but in proportion to the square of the speed. Appellants assert that it was in 1932 when these dormant unbalancing

---

[1] "7. In combination, a vehicle wheel comprising a rim having tire retaining flanges, a pneumatic tire mounted upon said rim, a balance weight for balancing said tire and wheel positionably along and removably secured to the peripheral edge of one of said flanges, said weight having a body portion contiguous with the outer side of said flange, an attachment portion associated with said body portion, said attachment portion embracing said peripheral edge and being gripped between the inner side of said rim flange and the side wall of said tire when the tire is inflated to retain the weight in position."

[2] "12. For balancing a wheel having a tire carrying rim with an outwardly extending flange, clip means elastically engaging the flange, and a weight carried by the clip."

forces became noticeable and critical by reason of the increased speed of the drivers.

The amount of such unbalance is measured in ounce-inches, that is to say, by the product of the unbalanced weight and its distance from the axis of rotation, and 20 to 40 ounce-inches are the maximum tolerable unbalance limits. The corrective weights necessary to cure such unbalance weigh a few ounces each, while the automobile wheel and tire weigh many pounds. Thus a small amount of unbalance is corrected by a weight of only a few ounces, and such small amount of unbalance becomes critical only at high speed where the application of the law that the force increases as the square of the speed, results in a rapid and large increase in the effectiveness of the unbalanced weight to interfere with the proper rotation. With this physical law this art has long been well acquainted.

Appellants submitted in evidence a permutation chart which purported to set forth 13 essential requirements and characteristics of commercial wheel balancing weights as follows:

1. Adapted to practically all wheels in general use.

2. Adapted to different weight sizes over normal range of unbalance.

3. Permanent, yet readily removable and reusable.

4. Locatable throughout circumference, without special points of attachment.

5. Locatable upon either or both sides of wheel.

6. Locatable at remotest lateral point of rigid structure from plane of rotation of wheel.

7. Locatable at remotest point of rigid structure from axis of wheel.

8. Thin attachment structure permitting intimate association with tire without injury or dislocation.

9. Designed and locatable to transfer practically all centrifugal forces from weight to wheel in compression.

10. Designed and locatable for protection by protruding wall of tire.

11. Body of weight supported from edge of rim and completed under rim.

12. Conformation of resilient clip to contour rim edge.

13. Anchoring of clip within weight of adjacent rim surface.

Of these DuSang and defendants' structure disclose all, and Hume discloses the first ten.

Appended to and included in this table is a list of 22 prior art patents in 13 of which is disclosed one or more of these so-called essential requirements, except those contained in columns which we have numbered 10, 12, 13.

| | No. | App. | Issue | Alleged essential requirements |
|---|---|---|---|---|
| Phelps | 121,411 | | 11–28–71 | 2 |
| Seymour | 189,506 | 12–20–76 | 4–10–77 | 1, 2, 5, 9 |
| Seymour | 250,684 | 9–28–81 | 12–13–81 | 3, 9 |
| Rudolph Br. | 23,418 | 10–21–96 | 12–19–96 | 3, 8, 9 ,11 |
| Hubbell | 734,417 | 5–19–03 | 7–21–03 | 2, 3, 7, 9 |
| Nichols | 1,158,712 | 12– 1–14 | 11– 2–15 | 2, 5, 6 |
| Spence | 1,305,978 | 9–27–17 | 6– 3–19 | 2, 3 |
| Hause | 1,746,476 | 4– 1–27 | 2–11–30 | 2, 3, 9 |
| Booth | 1,800,883 | 12–27–27 | 4–14–31 | 1, 2, 4, 6, 9 |
| Batie | 1,842,141 | 10–12–25 | 1–19–32 | 1, 2, 4, 5, 6, 7, |
| Tournon Fr. | 727,466 | 1931 | 6–18–32 | 2, 3, 9 |
| Sailler | 1,896,974 | 10–10–30 | 2– 7–33 | 2, 3, 9 |
| Cataline | 1,917,575 | 8-26-29 | 7–11–33 | 2, 3, 9 |

None of the other nine patents in this tabulation disclose any of the requirements alleged by appellants to be essential to dynamic stabilization. The reason for this is that that problem was not then confronting those applicants. All of these patents were issued prior to December 25, 1929, on applications filed from 1885 to February 1, 1929. All of these dates precede Hume's application by almost four years, and Du Sang's application by more than five years, and they precede by almost one year, the date which appellants inform us is the time when dynamic stabilization first demanded a solution.

From this tabulation we find that as early as October 12, 1925, when Batie filed his application, all of appellants' alleged essential requirements, except those numbered 10, 12 and 13 were well known to the art.

According to this table the three essential requirements, as alleged by appellants, which were not disclosed by one or more of the thirteen patents in the list to which we have referred are that the balancing weights are designed and locatable for protection by the protruding wall of the tire; that the resilient clip conforms to the contour of the rim edge, and is anchored within the weight of the adjacent rim surface. Of these Hume first disclosed No. 10, and DuSang is the only one disclosing Nos. 12 and 13.

█ If, as disclosed by column 10 of appellants' permutation chart, the balancing weight is designed and locatable for protection by the protruding wall of the tire, it is a matter of common knowledge that inflated pneumatic tires are always considerably wider than the rim of the wheel, and that portion of the inflated tire which protrudes outwardly from the rim of the wheel would, of course, in a very limited sense protect anything not extending outwardly beyond it, and we find no claim of Hume which specifically stresses this feature. Each claimed element of the disclosure performs the same function with the use of the alleged essential requirement No. 10 as it does without it. In any event we are convinced that such a disclosure would not rise to the dignity of invention for lack of novelty on the part of the applicant.

The Hume patent was granted after the citation of only the Phelps and the Hubbell patents, neither of which related to automobile wheel balancing means. The record does not indicate that the Rudolph (British) patent, which shows the use of a hook to attach a weight to the rim of a wheel, was considered by the Patent Office; nor that the second Seymour patent, No. 250,684, which taught the correction of both static and dynamic wheel unbalance, was considered; nor that the Booth patent was recognized as a disclosure of a longitudinally curved weight of a cross-sectional contour to fit in a curved marginal wheel flange.

Appellants contend that the problem of wheel unbalance was long unsolved, especially with respect to dynamic unbalance, yet they urge that very high speeds caused it to become acute, and that this did not occur until about the year 1930. Consistently with this contention, the court found that it became acute when knee action on the front axle came into use. This record discloses that any kind of wheel unbalance was quite promptly rectified by those skilled in the art.

Furthermore, appellants questioned the finding of the court that patentees Van Halteren, Marsh, and Rubsam by their patents numbered respectively 2,065,633; 2,049,918; and 2,137,415, disclosed clip type weights and that each of those patentees evolved such clips independently of Hume and DuSang. These patentees filed applications later than Hume but only a few months later than DuSang. Each made oath of first and true inventorship, as required by the statute, and each claimed subject matter of the spring clip balance weight which is here in suit. No evidence was introduced by appellants that any of these applicants had derived the idea for the clip type weight from either Hume or DuSang, and under such circumstances the court was warranted in finding that the work of each of those patentees was independent of the others as well as of Hume and DuSang. Of course, these applicants' patents, being later, cannot in any way anticipate appellants' patents in suit, nor are they cited for that purpose. The court in its next finding explained the

reference in the following language: "In view of the apparent independent work of the five patentees (including Hume and DuSang), the idea of inventive concept is rendered inapplicable to this case."

We think the court's ruling that the claims of this patent in issue are invalid is correct.

### The DuSang Patent.

Claim 1 of this patent is in issue.[3] It is differentiated from the Hume patent in that the clip is made of spring steel and the weight is cast over a barbed foot of the clip and is located almost if not entirely under the rim of the wheel. In the Hume patent, the weight is substantially confined within the rim, and in all other respects the disclosures of both patents are the same. The use of steel in a spring is quite old and the use of it in a spring clip would not in our judgment constitute an inventive concept. The only material difference in claim 1 of this patent over the disclosure of the Hume patent is a casting of the weight over a barbed foot of the clip. It was long known in the casting or foundry arts that an insert which included a bent part would have a better anchorage in a part cast therearound than a straight smooth part. Such is shown in patent No. 1,068,409 to Chester, and patent No. 1,295,370 to Porter. Of course, this so-called novel feature pertains only to the manufacture of the weight, and does not affect its balancing function.

With reference to appellants' permutation chart, this patent is alleged to contain all the essential requirements and characteristics of commercial wheel balacing weights. What we have heretofore said about the first ten columns of that chart with respect to the Hume patent is equally applicable to DuSang. Columns 11, 12 and 13 are alleged to be applicable to DuSang. Column 11, as we have heretofore shown, is disclosed by prior patent to Rudolph. There are only two of the alleged essential requirements disclosed by DuSang which are not disclosed by the prior art. They are found in columns 12 and 13 and are the conformation of the resilient clip to the contour of the edge of the rim, and the anchoring of that clip within the weight of the adjacent rim surface. We are unable to conclude that either of these amounts to inventive concept, whether separately or in combination.

Appellants have presented quite an impressive record of commercial success. However, that is to be considered only where there is doubt as to patentability. Of this we have no doubt. We are convinced that each claim in issue as to each patent is invalid for lack of novelty, in view of the prior art and the rule relating to the skill of the art.

Decree affirmed.

[3] "For balancing a wheel having a rim with an edge extending upwardly and outwardly, the combination of a weight shaped to be confined substantially under the projection of said edge, and a clip carrying the weight and compressibly engaging over the edge to extend around and downwardly on the inner side thereof, said clip being made out of spring steel, and said weight being cast over a barbed foot of the clip."