### HARLEY C. LONEY CO. v. NELSON.
### No. 4197.

United States District Court
W. D. Missouri, W. D.
Dec. 10, 1948.

Heaman & Patch, of Jackson, Mich., and Casper W. Ooms, of Chicago, Ill. (Thomas E. Scofield, of Kansas City, Mo., and Robert C. Williams of Jackson, Mich., of counsel), for plaintiff.

Ralph E. Williamson, of Williamson & Williamson, of Minneapolis, Minn. and Blackmar, Newkirk, Eager, Swanson & Midgley, of Kansas City, Mo. (Lawrence R. Allison, of Minneapolis, Minn., of counsel), for defendant.

REEVES, Chief Judge.

The sole question for decision in this case is whether Patent No. 2,036,757 issued to James W. Hume, Jackson, Michigan, is valid.

The patent was applied for on December 3, 1932. It related to an improvement in the balancing of vehicle wheels provided with pneumatic tires. The reasons back of the invention as recited in the patent were, that "the increasing speed at which motor vehicles are driven has resulted in the necessity of dynamically balancing the wheels." To achieve a good result it was necessary to balance the entire assembly, which would include the wheel, the rim, and the tire; these constituted the complete unit

Some of the factors requiring a balancing means were: The circumstance that the shifting of the rim during the rolling action resulted in variation of the thickness of the flanges; the welding of the rims; the variation in tire construction; and the concentrated weight of the valve stem of the inner tube. These all tended to cause an unbalanced condition of the wheel.

There was a further recitation that previously the attempts to remedy conditions of unbalance on motor vehicle wheels were cumbrous, expensive and ineffective and the means employed lacked "flexibility and ease of installation." The object of the invention, as specified by the patentee, was "to provide a balancing mass for vehicle wheels of the pneumatic tire type, which is inexpensive, effective and may be readily and adjustably positioned along the flange of the wheel rim to balance the wheel, rim, and tire assembly." Typical of the claims interposed by the applicant were the following:

"7. In combination, a vehicle wheel comprising a rim having tire retaining flanges, a pneumatic tire mounted upon said rim, a balance weight for balancing said tire and wheel positionably along and removably secured to the peripheral edge of one of said flanges, said weight having a body portion contiguous with the outer side of said flange, and attachment portion associated with said body portion, said attachment portion embracing said peripheral edge and being gripped between the inner side of said rim flange and the side wall of said tire when the tire is inflated to retain the weight in position."

The attaching portion or means was either by set screws or the equivalent, which was construed to include the spring clip type of attachment.

It is the contention of the defendant, among other things, that the patent was invalid by reason of anticipation, and, moreover, that it involved no more than mere

mechanical skill. The defendant was reinforced in this contention by a decision of the Court of Appeals, Seventh Circuit, styled Harley C. Loney Co. v. Revenscroft, 162 F.2d 703. From the facts before that court it was held that the patent and the claims thereof were invalid in the light of the prior art, and, moreover, the invention did not involve discovery but merely the exercise of mechanical skill.

The evidence in this case showed that beginning particularly in the the year 1924, with the introduction of so-called balloon automobile tires, the question of "wheel shimmy" and "wheel tramp" became acute, although such conditions had vexed the automobile industry even prior to that time. "Shimmy" may be defined as shaking of the automobile wheels from side to side or laterally while in motion, whereas "tramp" is a vertical or up and down motion. Both of these movements were and are brought about by unbalance in the wheel assembly. At the slower speed the unbalance of the wheel either statically or dynamically did not appear in the operation. It seriously appears, however, in a rapid rotation or at a high speed.

■ It is a matter of common knowledge, and the evidence so shows, that the speed of automobiles was greatly increased upon the highways approximately after the year 1920. The result was that unbalance of the tire structure or unit became a problem to automotive engineers and others. With increasing speed of motor vehicles the problem increased and automobile engineers were perplexed, nonplussed and confused as to how the problem might be solved.

Many and unavailing efforts were made to solve the problem. It was then that plaintiff appeared with his proposed device as above described. It was promptly commercially successful. It was recognized by automotive engineers and others as great progress toward, if not a complete solution of the vexing problem. After much study and inquiry and after four years, the patent office granted the patent. Apparently the problem confronting the patent office was whether the device or means proposed by the applicant was anticipated and well known in the prior art. The question urged there, and here, was that conditions of unbalance had been previously experienced in pulleys, fly wheels, etc., and that test weights to be attached for experimental purposes had employed identical means of attachment, such as set screws and spring clips, as in this case; and neither then, nor now, did those who studied the device consider that it was a device used in combination with other elements and factors and that the device standing alone was not the sole object of the invention.

Many questions have been raised by the parties, all of which will be considered and discussed, so far as necessary for a decision, in the course of the opinion.

1. Section 31, Title 35 U.S.C.A. vouchsafes to, "any person who has invented or discovered any new and useful art, machine, manufacture, * * * or any new and useful improvements thereof," that he "may * * * obtain a patent therefor."

■ As indicated, the only serious question in this case is whether the patentee discovered a new and useful art or any new and useful improvement thereof. In the case of Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878, loc. cit. 881, the Court of Appeals of this Circuit said:

"The law is that whoever finally perfects and improves a device and renders it capable of practical, useful and effective operation is entitled to a patent although others had the idea and made experiments toward putting it into practice."

This rule is universal and is a sound postulate for a decision in this case. That the patentee in this case perfected a device in such way as to make it capable of practical, useful and effective operation cannot be denied. It was a new problem and there was no prior art.

The demand for the product was enormous. Even the defendant or her principal was successfully using the device and has strenuously resisted this action, not upon the ground that there was no infringement but upon the sole ground that it was not a patentable device and therefore the patent was void. The devices of the defendant or her employer were not substantialy different from that of the plaintiff either in

the result attained, the means of attaining that result, or the manner in which its different parts operate and. cooperate to produce said result.

There being no question but that the ownership of the title to said patent is in the plaintiff, then plaintiff is entitled to recover unless the patent is invalid. The contention of the plaintiff as well as the contents of the patent and its obvious usefulness all bring it within the doctrine of General Electric Supply Corporation v. Maytag Co., 8 Cir., 100 F.2d 218, loc. cit. 221, where the court said:

"A new combination of old elements whereby a new and useful result is produced, or an old result is obtained in a more facile, economical, and efficient way, is protected by a patent."

One of the attorneys for plaintiff aptly expressed the useful and patentable element when he said, with reference to the inventor, "all he did was to recognize that this problem required the application of a weight in a very facile way." This language, as quoted and commented upon by counsel for the defendant in their brief was the key to the solution of the problem. It expressed the object of the patent as set forth in the patent itself, which was a device described as "inexpensive, effective *and may be readily and adjustably positioned along the flange of the wheel rim to balance the wheel, rim, and tire assembly."* (Italics mine.)

The patent in question possesses in a high degree all of the factors or elements warranting a holding of validity. While not bound by the opinion of the Court of Appeals, Seventh Circuit, yet it should be persuasive unless the facts before that court were materially different from the facts here.

2. The facts before the Court of Appeals, Seventh Circuit, impressed. the court that the problem of "wheel shimmy" and "wheel tramp" did not become acute until approximately 1930, and, then, upon these facts, the court said [162 F.2d 708]:

"This record discloses that any kind of wheel unbalance was quite promptly rectified by those skilled in the art."

In this case the evidence was, as above stated, diametrically opposed and contrary to the effect that the question of wheel unbalance became a vexing and confusing problem to automotive engineers and others skilled in the art, for a period long antedating the issuance of this patent, that is, for more than twelve years. During all that long period of tremendous progress of the automotive industry, and while assiduously studied by skilled artisans, the matter of unbalance continued to be and remained unsolved. Even able counsel· for the defendant in their well prepared, logical and learned brief, said: "Wheel shimmy and wheel tramp have always been somewhat of a troublesome problem in the automobile industry and still are."

Contrary to this statement by learned counsel, the Court of Appeals in the Seventh Circuit said that, "wheel unbalance was quite promptly rectified by those skilled in the art." With these facts before the Court of Appeals it was probably justified in ruling as it did. It could not be well doubted that, if this case were before the same court, it would reach an entirely different conclusion.

3. It is argued by the defendant that the plaintiff was guilty of inequitable conduct after the decision of the Seventh Circuit Court of Appeals by still maintaining or insisting upon the validity of its patent. It had a right to do this: Triplett et al. v. Lowell et al., 297 U.S. 638, loc. cit. 645, 56 S.Ct. 645, 649, 80 L.Ed. 949. Under similar circumstances the court said:

"The court whose jurisdiction is invoked by such a suit must determine for itself validity and ownership of the claims asserted, notwithstanding a prior adjudication of invalidity of some of them * * *."

Other opinions are to the same effect.

Other questions have been raised, but, in the light of prior rulings in the case, discussion of those questions is deemed unnecessary. It would follow from the above that the plaintiff's patent is valid and infringed.

Plaintiff is entitled to a decree as prayed. Counsel for plaintiff will submit a proposed decree.