**SPEAKMAN COMPANY, Plaintiff and Counterdefendant,**

v.

**WATER SAVER FAUCET CO., INC., Defendant and Counterplaintiff.**

**No. 71 C 3136.**

United States District Court, N. D. Illinois, E. D.

April 18, 1973.

------♦------

Prangley, Clayton, Mullin, Dithmar & Vogel, Chicago, Ill., Rudolf E. Hutz and Paul E. Crawford, Connolly, Bove & Lodge, Wilmington, Del., for plaintiff.

Wallenstein, Spangenberg, Hattis & Strampel, Chicago, Ill., for defendant.

## DECISION and ORDER

McMILLEN, District Judge.

This case came on for trial on the plaintiff's complaint that defendant is infringing its patent No. 3,090,050. Defendant filed a counterclaim to declare the patent invalid. For the reasons set forth below, we find for the defendant.

Plaintiff's employees Fraser and Mc-Lean patented an eye and face washing device for cleansing acid and other corrosive substances from the eyes and face in emergencies. The original application was filed December 8, 1955, and the patent eventually issued May 21, 1963. Claims 3, 4, 6, 7, 9, 10 and 11 which are involved in this suit were contained in the original filing.

The validity of the patent depends essentially on whether the use of aerating nozzles as water heads results in a sufficiently unobvious combination to be patentable under 35 U.S.C. §§ 101, 102 and 103. Defendant asserts that the combination is obvious and teaches nothing not already known in the art. The patent is relatively simple. [A copy of the patent was attached at this point of the opinion but is not sufficiently clear for reproduction in the printed opinion].

The prior art cited by defendant pursuant to 35 U.S.C. § 282 consists of six patents and two catalogue illustrations. Four of the six patents were cited by the Patent Office but the catalogues were not. The first prior art patent in point of time is Aghnides No. 2,210,846 issued August 6, 1940, not cited by the Examiner. This patent covered an aerating head such as plaintiff uses in its device. Aghnides improved his aerator in patent No. 2,633,343 issued March 31, 1953 which was cited by the Patent Office. These two patents demonstrate that aerators were well known before plaintiff's application was filed in 1955. The device was very successful commercially, but neither the inventor nor anyone else thought of using it in the manner later patented by the plaintiff.

Defendant uses a competitive aerating head, also purchased on the open market, and there is no discernible difference between the function of the two devices when used for eye wash purposes. Nor do the parties have standing to claim that one infringes the other. Defendant did not copy plaintiff's product.

The next prior art device is contained in Cushman No. 2,270,239 issued January 20, 1942. This invention covered a method of operating faucet valves by a foot pedal and covers the specific limitations in plaintiff's claims 4 and 7.

Next is Benson No. 2,482,960 issued September 27, 1949 which teaches a fountain eye bath for directing solid streams of water toward the face and eyes. This device covered a basin similar to that contained in plaintiff's claims and differs from it primarily because of the absence of the aerator. There are other obvious differences in construction, but the basic idea of flooding the affected anatomy with water was covered by Benson. He also provided for a pressure equalizer to make each stream of water substantially the same, as in plaintiff's claims.

Logan Patent No. 2,775,774 filed May 18, 1953 is designed to emit sprays of water from tubes rather than from heads to reduce the impact on the face and eyes. He was also concerned with de-

**1316**

signing a bowl that would not allow the acid to splash or spill out. Although the shape of the basin is not covered by plaintiff's claims, it has made much of the fact that they do provide for one, whereas in defendant's devices the bowl is optional. In passing, it should be noted that plaintiff's model No. SE–921 does not include a bowl but was apparently erroneously marked with the patent notice. Logan teaches every significant aspect of plaintiff's patent, including the idea of reducing the pressure of the water that strikes the user's face. Logan accomplishes this by converting the water stream to a spray. It is relevant, we think, that Aghnides describes his aerator as performing the same function. (See Aghnides Patent No. 2,210,846, col. 2, lines 10–16.)

The last prior art patent relied on by the defendant is Mellette No. 2,790,632 filed June 3, 1954. This is merely a water spout which can be swivelled during use, to direct the flow of the water either with or without an aerator. We agree with plaintiff that this patent is not better prior art than that cited by the Examiner. However, it does teach the use of an aerator to discharge water at the user's face, referring to its aerator as a "bubbler."

Defendant also cited and introduced in evidence two sales catalogue advertisements for eye wash fountains published by Haws Drinking Fountain Co. in 1951 and 1952. They show the same type of emergency eye and face washing device covered by plaintiff's Fraser patent but with the use of "bubblers" as an aerator. This term has not been elaborated on by any evidence, but the dictionary definition of a "bubbler" in 1961 and today is "any of several devices in which air or gas is bubbled through a liquid" (Webster's New International Dictionary, Unabridged, 3 Ed. 1961), and Aghnides defines his aerator as "mixing a gas with a liquid . . ." (No. 2,-210,846, col. 1, lines 1–2).

The addition of Aghnides' head to Benson's, Logan's and Haws' combination resulted in two advantages, according to plaintiff's evidence. One was a gentler impact by the water on the eyes and skin than was obtained by a solid stream. The other was that the water did not run off the affected areas as readily as a solid stream did, because the aerated water has less density and tended to cling. Plaintiff did not show any physiological or medical advantage to these characteristics, or any advantage over Haws' bubbler or Logan's spray which are merely unpatented and less sophisticated methods of aeration. Its expert merely testified that the Fraser stream felt better and did not splash as much as a solid stream. There is no evidence that Aghnides' method of aeration does anything different than other methods of aeration when used with eye and face washers.

■ Defendant did not prove obviousness or the state of the art by expert testimony or by any individual who was personally working in the field in 1955. Plaintiff has not contended that any such affirmative evidence is necessary, and we see no logical reason to require it so long as the prior art is a matter of public record and published documents. Cf. 35 U.S.C. § 102(b). It was shown that plaintiff, in fact, did have access to the Haws' devices and publication, among others, and their expert witness testified to his knowledge of the various types of eye wash devices which had been developed before 1955 by Logan and by Atlantic Richfield. The difference between the prior art and plaintiff's patent, he said, was the use of aeration which by 1955, was a common household item and was being used on other of plaintiff's fixtures.

■ The Fraser device, when considered in light of prior art available to this court, is merely an obvious combination of old elements. Logan and Benson provide the assembly for an eye and face bath. Logan even suggested the need for a gentle (i. e. low pressure) stream of copious water. The Haws catalogue bridges the gap by using a bubbler in this type of device. The prior art, therefore, not only taught every feature in

claims 3, 6 and 9–11; it also taught how to combine them to achieve an aerated eye-bath. Faced with this evidence, we are of the opinion that any practitioner in the art, particularly one of ordinary skill, would have been able to achieve the combination claimed by Fraser. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Sutter Products Company v. Pettibone Mulliken Corp., 428 F.2d 639 (7th Cir. 1970).

The history of this application is also instructive. The Patent Office originally rejected the claimed invention, relying primarily on the Logan, Benson and Aghnides patents as we have discussed them. This rejection was appealed to the Patent Office Board of Appeals, both the plaintiff and the examiner briefing this issue. Instead of allowing the Board to act, plaintiff withdrew the appeal and filed a continuing application.

The continuing application contained more detailed claims, but the issue presented was substantially the same as raised by the first examiner's rejection and now raised by defendant herein: whether the use of an aerator in a eye and face bath was unobvious. The new claims were again rejected, this time by the new examiner. The inventors responded to the examiner's rejection with the same argument they had previously presented to the first examiner. The application was then allowed. We frankly fail to see the basis for this change in position by the Patent Office.

The prior appeal, its unexplained withdrawal, and the adamant refusal of the first examiner to allow a patent on plaintiff's invention, followed by an uncontested issuance by a second examiner, weakens plaintiff's argument as to unobviousness. While it has been said that a more thorough investigation and consideration by the Patent Office strengthens the presumption of validity, it can as well be said in the case at bar that the issue of patentability was not very clear or persuasive to the Patent Office, and its numerous considerations cast doubt on the soundness of the final decision. Boas Box Co. v. Proper Folding Box Corp., 330 F.Supp. 401 (E.D. N.Y.1971); cf. Hoover Company v. Mitchell Manufacturing Co., 269 F.2d 795, 799 (7th Cir. 1959).

Plaintiff showed that its device has been successfully marketed since its introduction in 1956. This is a proper consideration when the question of patentability is unresolved, but it cannot establish patentability by itself. Graham v. John Deere Co., 383 U.S. 1, at 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). There are many factors which account for plaintiff's success, not the least of which is its aggressive prosecution of any competitors who try to sell eye wash fountains with aeration heads. Until defendant entered the field in 1969, plaintiff had been able to exclude its other competitors by threatening legal enforcement of its patent. Since plaintiff's total sales for the aerated device in 1972 amounted to a gross of only $1,000,000 and since this constitutes approximately half of all the eye wash devices sold, it is not surprising that no other company wished to invest the necessary money to enter the field and contest the validity of the patent.

We find and conclude, given the nature of the prior art, that plaintiff's device would have been obvious to a person having ordinary skill in the art at the time the invention was made and that the defendant has overcome the presumption of validity by clear and convincing evidence. We therefore find that Fraser patent No. 3,090,050 is invalid and direct the defendant-counterplaintiff to prepare a judgment order to that effect, agreed to by the plaintiff as to form.